**Steven L. BOYER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–81.

United States Court of Veterans Appeals.

Submitted July 2, 1991.

Decided Oct. 30, 1991.

Steven L. Boyer, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and David W. Engel, Washington, D.C., were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Steven Boyer appeals from an August 1, 1990, Board of Veterans' Appeals (BVA) expanded panel decision on reconsideration. Because the Court holds that the BVA expanded panel applied the wrong standard of review, the Court vacates the BVA decision and remands the case for readjudication. As our disposition of this appeal is based upon a procedural error of the BVA, we do not reach the facts of appellant's claims for compensation. The Court has jurisdiction to hear this appeal pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)).

A BVA panel denied appellant's claim on November 3, 1989. R. at 188. On November 21, 1989, appellant requested reconsideration by an expanded BVA panel. Appellee's Motion to Stay Proceedings, Mar. 26, 1990, Exhibit # 2. His request was granted by the Chairman of the BVA in a letter dated March 29, 1990. While appellant's motion for reconsideration was still pending, he attempted to note an appeal in this Court on February 9, 1990. On August 1, 1990, the BVA, on reconsideration, again denied appellant's claims and on August 8, 1990, appellant filed what was styled as a "Motion to Proceed With Appeal of Mr[.] Steven L. Boyer".

## I.

Two preliminary questions presented are 1) whether appellant has filed a valid Notice of Appeal (NOA) and 2) which BVA decision does the Court have jurisdiction to review. Appellant's February 9, 1990, NOA could have no effect while the BVA was deciding whether to reconsider. *See Rosler v. Derwinski,* 1 Vet.App. 241, 244 (1991); *Cerullo v. Derwinski,* 1 Vet.App. 195 (1991). An intriguing question arises as to whether this premature NOA could become effective upon the BVA's completion of reconsideration. *See generally* Fed.R.App.P. 4(a)(4). We need not resolve this issue, however, because appellant's August 8, 1990, Motion to Proceed with Appeal satisfies the requirements for a valid NOA. *See Chadwick v. Derwinski,* 1 Vet.App. 74, 76

(1990). The issue of which BVA decision is subject to review can also be easily resolved. As the Court stated in *Cerullo,* 1 Vet.App. at 198, only final decisions of the BVA can be reviewed in this Court. Under 38 U.S.C. § 7103(b) (formerly § 4003(b)):

> When a case is heard by an expanded section of the Board ... the decision of a majority of the members of the expanded section shall constitute the *final decision* of the Board.

(Emphasis added). Thus, the only reviewable final decision is the decision reached following reconsideration. *Cf. Winter v. ICC,* 851 F.2d 1056, 1061 (8th Cir.1988) ("if the Commission *grants* a petition for reconsideration ... and issues a new order, the new order is the reviewable final order ... even if the new order merely reaffirms the rights and obligations of the original order"), *cert. denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988); *Rosler v. Derwinski,* 1 Vet.App. at 244.

## II.

We now turn to the standard of review employed by the BVA in its reconsideration decision. Under the BVA's interpretation of the regulations covering reconsideration, 38 C.F.R. §§ 19.185–19.190 (1990), the expanded panel reviewed the earlier BVA decision, stating:

> A decision of the Board of Veterans Appeals is final and may not be reversed except upon a finding of obvious error of fact or law. To establish obvious error, the evidence must be so persuasive of fact or law contrary to the Board's prior decision as to preclude any other determination.

*Steven L. Boyer,* BVA 90–26615, at 4 (Aug. 1, 1990).

We find, however, that on reconsideration the BVA was required to employ *de novo* review.

## A.

In enacting the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), Congress gave the BVA express authority to reconsider its decisions before they become final. 38

U.S.C. § 7103 (formerly § 4003). Prior to enactment of the VJRA, section 4003(b) read:

> When there is a disagreement among the members of the section the concurrence of the Chairman with the majority of members of such section shall constitute the final determination of the Board, except that the Board on its own motion *may correct an obvious error* in the record, or may upon the basis of additional official information from the service department concerned reach a contrary conclusion.

38 U.S.C. § 4003(b) (1982) (emphasis added). Acting (presumably) in reliance on the above language and on other provisions of the old law, the Department of Veterans Affairs (formerly the Veterans' Administration) developed a procedural framework for administrative reconsideration, despite the absence of the term "reconsideration" in those statutes. *See* 38 C.F.R. §§ 19.185–19.190 (1990). A key element in this framework was the standard of review for "obvious error of fact or law." *See* 38 C.F.R. §§ 19.185(a), 19.186(a), 19.187(a) (1990).

Former section 4003, now section 7103, of title 38, U.S.Code, was amended by VJRA section 202(a), effective by virtue of VJRA section 401(d) on January 1, 1989, Pub.L. No. 100–687, § 401(d), 102 Stat. at 4122, to read as follows:

> (a) Decisions by a section of the Board shall be made by a majority of the members of the section. The decision of the section is final *unless the Chairman orders reconsideration of the case.*
>
> (b) If the Chairman orders reconsideration in a case, the case shall upon reconsideration be heard by an expanded section of the Board. When a decision is heard by an expanded section of the Board ... *the decision of a majority of the members of the expanded section shall constitute the final decision of the Board.*
>
> (c) Notwithstanding subsection (a) and (b) of this section, *the Board on its own motion may correct an obvious error in the record.*

(Emphasis added.) Unlike the statutory language it replaced, the new law expressly provides a procedure for administrative review within the BVA under the label of "reconsideration" by an "expanded section of the Board." Congress did not, however, state with precision what such a review should entail.

The concept of reconsideration is commonplace in the field of administrative law. *See* C. Koch, 1 *Administrative Law and Practice* § 6.76 (1985 & Supp.1990). The term, however, cannot be said to hold a universal meaning. Thirty years ago, Chief Justice Warren noted that a review of "the acts governing the various administrative agencies ... reveals a wide variety of detailed provisions concerning reconsideration, each one enacted in an attempt to tailor the agency's discretion to the particular problems in the area." *CAB v. Delta Air Lines, Inc.*, 367 U.S. 316, 322, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961). It could thus be argued that Congress, by failing to include any defining language in the VJRA, implicitly authorized the Department of Veterans Affairs to adopt whatever form of reconsideration it might deem appropriate. A close reading of the VJRA, however, leads to a different conclusion.

It is well established that a court, when interpreting a word or phrase found in a statute, must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). To determine what Congress meant by its use of the term "reconsideration" in section 7103, one must look to the section immediately following, viz., section 7104 (formerly section 4004), which states:

> Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.

38 U.S.C. § 7104(a).

■ Sections 7103 and 7104 define the process by which the BVA is to formulate its final decisions. Given the absence of any indication to the contrary, the Court finds that a "decision of the Board" made under section 7103(b) is nothing less than a "decision" as described by section 7104(a). "When the same word or phrase is used in different parts of a statute, we presume that the word or phrase has the same meaning throughout." *S & M Investment Co. v. Tahoe Regional Planning Agency*, 911 F.2d 324, 328 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991); *Firestone v. Howerton*, 671 F.2d 317, 320 n. 6 (9th Cir.1982); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980). This would seem especially so when the words in question appear in closely related sections of the law and, as here, were added to the law by the same statute. Pub.L. No. 100–687 §§ 202(a), 203(a), 102 Stat. 4105, 4110–11 (1988). *See In re Moore*, 907 F.2d 1476, 1478 (4th Cir.1990). It necessarily follows that the expanded panel is to review the record under the same standard employed by the initial panel, i.e., conduct a *de novo* review. *Cf. Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991) (Congress' failure to indicate that different burdens of proof apply to establishment of different exceptions to Bankruptcy Code's general policy of discharge implies that same standard applies to all). As the General Counsel of the Department of Veterans Affairs has recognized, the reconsideration panel should proceed in all respects as though the prior panel decision had not been entered:

> [I]nstead of a review limited to the question of whether the previous BVA section erred, the earlier decision is vacated and is replaced with a decision by an expanded section. Finally, as subsection (c) provides for correction of obvious error in a manner other than through reconsideration, the most rational interpretation of section 4003 is that it contemplates a broader standard of review on reconsideration than that of "obvious error."

VA O.G.C.Prec. No. 89–90, at 2.

### B.

Pursuant to our authority under 38 U.S.C. § 7261(a)(3)(C) (formerly § 4061(a)(3)(C)), we hold the regulations governing reconsideration invalid to the ex-

tent they are construed within the Department of Veterans Affairs in a manner inconsistent with the congressional mandate to conduct such proceedings under a standard of *de novo* review. *See* 38 C.F.R. §§ 19.185(a), 19.186(a), 19.187(a). The current law simply does not permit a reconsideration panel to affirm an erroneous initial decision on the grounds that the error was not "obvious." Neither does it require an appellant to demonstrate "obvious error" to obtain on reconsideration favorable action on an earlier unfavorable decision. Congress, by expressly authorizing reconsideration, implicitly declared that the "public interest in reaching what, ultimately, appears to be the right result" sometimes outweighs the administrative interest in achieving finality. *CAB v. Delta Air Lines,* 367 U.S. at 321, 81 S.Ct. at 1617.

Although we find these regulations partially invalid, we note that 38 U.S.C. § 7103 does not specify any criteria for granting or denying reconsideration. *See ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 278, 107 S.Ct. 2360, 2365, 96 L.Ed.2d 222 (1987) (citing *United States v. Pierce Auto Freight Lines,* 327 U.S. 515, 535, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946) ("It has been held consistently that rehearings before administrative bodies are addressed to their own discretion")). We merely state that a regulation that purports to authorize denial of reconsideration except upon showing of "obvious" error is contrary to the intent of Congress and too restrictive as a matter of law. "A reviewing court 'must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.'" *Securities Indus. Ass'n v. Bd. of Governors of the Federal Reserve System,* 468 U.S. 137, 143, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (quoting *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)); *see also Rust v. Sullivan,* — U.S. ——, 111 S.Ct. 1759, 1767–68, 114 L.Ed.2d 233 (1991); *Nehmer v. United States Veterans' Admin.,* 712 F.Supp. 1404, 1416–17 (N.D.Cal.1989); *Wayne State Univ. v. Cle-*

*land,* 440 F.Supp. 811, 817 (E.D.Mich.1977) (VA "regulations must be 'consistent' with the laws they seek to carry out"). While an argument could be advanced that the regulations do not technically conflict with the amended version of former section 4003, the Supreme Court has stated:

> Deference is ordinarily owing to the agency construction if we can conclude that the regulation "implement[s] the congressional mandate in some reasonable manner." *United States v. Correll,* 389 U.S. 299, 307 [88 S.Ct. 445, 450, 19 L.Ed.2d 537] [1967].
>
> . . . .
>
> . . . This Court has firmly rejected the suggestion that a regulation is to be sustained simply because it is not "technically inconsistent" with the statutory language, when that regulation is fundamentally at odds with the manifest congressional design. *United States v. Cartwright,* [411 U.S. 546, 557, 93 S.Ct. 1713, 1719, 36 L.Ed.2d 528 (1973)]. The challenged Regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's "origin and purpose." *National Muffler Dealers Ass['n], Inc. v. United States,* 440 U.S. [472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979)].

*United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24–26, 102 S.Ct. 821, 827–28, 70 L.Ed.2d 792 (1982). As the General Counsel has persuasively pointed out in his precedent opinion, the regulations here considered, to the extent the BVA construes them to require a showing of obvious error, are "at odds" with congressional design.

### III.

We hold that, as of January 1, 1989, the BVA was required by law to proceed in a case under reconsideration as though the initial panel decision had never been entered and, instead, to conduct a *de novo* review "based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." 38 U.S.C. § 7104(a) (formerly § 4004(a)). Hence, the BVA's August 1, 1990, decision is VACATED and this case is REMANDED

to the expanded BVA section for reconsideration in accordance with this opinion.